Slip Op. 12 - 155

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FORMER EMPLOYEES OF WESTERN DIGITAL TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. SECRETARY OF LABOR, <br><br> Defendant. | **PUBLIC VERSION** <br><br> Before: Donald C. Pogue, <br> Chief Judge <br><br> Court No. 11-00085 |

## OPINION

[negative determination of eligibility to apply for trade adjustment assistance affirmed]

Dated: December 21, 2012

    James R. Cannon, Jr. and Thomas Beline, Cassidy Levy Kent (USA) LLP, of Washington, DC, for the Plaintiffs.

    Antonia R. Soares, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant. With her on the brief were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of counsel on the brief was Jonathan Hammer, Employment and Training Legal Services, Office of the Solicitor, U.S. Department of Labor.

    **Pogue, Chief Judge**: Plaintiffs in this action are former employees of Western Digital Technologies, Inc., Hard Drive Development Engineering Group, Lake Forest, California. The Plaintiffs seek review of a negative determination by the United States Department of Labor regarding their eligibility for benefits under the federal Trade Adjustment Assistance

program.[1]  Plaintiffs petitioned for such benefits on behalf of workers at their firm who, prior to the termination of their employment in late 2008 to early 2009, were engaged in the supply of engineering functions for the development of hard disk drives.  See Negative Determination on Remand, 76 Fed. Reg. at 61,746-47.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(d)(1) (2006).  As explained below, because the agency's negative determination is supported by a reasonable reading of the administrative record, the determination will be affirmed.

## BACKGROUND

The Employment and Training Administration of the Department of Labor ("Labor") will certify a group of workers as

---

[1] See Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance, 75 Fed. Reg. 51,846, 51,849 (Dep't Labor Aug. 23, 2010) ("Negative Determination"), aff'd on reconsideration, Western Digital Technologies, Inc., Co[r]porate Headqua[r]ters/Hard Drive Development Division, Lake Forest, CA, 76 Fed. Reg. 10,403, 10,403 (Dep't Labor Feb. 24, 2011) (notice of negative determination on reconsideration) ("Negative Determination on Reconsideration"), aff'd on remand, Western Digital Technologies, Inc.: Hard Drive Development Engineering Group Irvine (Formerly at Lake Forest), CA, 76 Fed. Reg. 61,746, 61,747 (Dep't Labor Oct. 5, 2011) (notice of negative determination on remand) ("Negative Determination on Remand"), aff'd on 2d remand, Western Digital Technologies, Inc., Hard Drive Development Engineering Group Irvine (Formerly at Lake Forest), CA, 77 Fed. Reg. 8284, 8287 (Dep't Labor Feb. 14, 2012) (notice of negative determination on remand) ("Negative Determination on Second Remand").

eligible to apply for trade adjustment assistance ("TAA"),[2] pursuant to a petition filed under the Trade Act of 1974, if the agency determines that the workers meet the eligibility criteria set out in 19 U.S.C. § 2272. 19 U.S.C. § 2272 (Supp. III 2009).[3] Section 2272 provides that the primary TAA eligibility criteria[4] are met if a "significant number or proportion" of a U.S. firm's workers have been or are threatened to be "totally or partially separated," and either increased imports[5] or a shift abroad of

---

[2] TAA benefits include unemployment compensation, training, job search and relocation allowances, and other employment services. Former Emps. of Kleinerts, Inc. v. Herman, 23 CIT 647, 647, 74 F. Supp. 2d 1280, 1282 (1999); see 19 U.S.C. §§ 2295-98 (2006).

[3] Plaintiffs' petition, numbered TA-W-72,949, Compl., ECF Nos. 1 & 2, at ¶ c, is governed by the Trade and Globalization Adjustment Assistance Act of 2009, 19 U.S.C. §§ 2252-2401g (Supp. III 2009). See Emp't & Training Admin., U.S. Dep't of Labor, Trade Adjustment Assistance for Workers (comparison of benefits by petition number), available at http://www.doleta.gov/tradeact/pdf/side-by-side.pdf (last visited Dec. 20, 2012). Unless otherwise noted, further citation to Title 19 of the U.S. Code is to Supplement III (2009) of the 2006 edition.

[4] Section 2272 additionally provides that, subject to certain conditions, "adversely affected secondary workers" – upstream suppliers or downstream producers of TAA-certified firms – may also be eligible for TAA benefits. 19 U.S.C. § 2272(c). Plaintiffs do not claim to be covered by this subsection.

[5] See 19 U.S.C. § 2272(a)(2)(A) (providing that TAA eligibility criteria are met if (i) the sales and/or production of the laying off firm have decreased absolutely; and (ii) there has been a concurrent increase in imports of articles or services "like or directly competitive with" those produced by
(footnote continued)

production or services[6] "contributed importantly" to the layoffs. See 19 U.S.C. § 2272(a); see also Former Emps. of Se. Airlines v. U.S. Sec'y of Labor, __ CIT __, 774 F. Supp. 2d 1333, 1336 (2011) ("The Trade Act provides for TAA benefits to workers who have been completely displaced as a result of increased imports into, or shifts of production out of, the United States.") (citing 19 U.S.C. § 2272).

After investigating Plaintiffs' petition for TAA certification, Labor issued a negative determination, finding that TAA eligibility criteria had not been met. Negative

---

the laying off firm, or articles like or directly competitive with articles "into which one or more component parts produced by the firm are directly incorporated" or which are "produced directly using services supplied by such firm", or "articles directly incorporating one or more component parts produced outside the United States that are like or directly competitive with imports of articles incorporating one or more component parts produced by [the laying off] firm"; and (iii) "the increase in imports described in clause (ii) contributed importantly to [the] workers' separation or threat of separation and to the decline in the sales or production of such firm").

[6] See 19 U.S.C. § 2272(a)(2)(B) (providing that TAA eligibility criteria are met if (i) "there has been a shift by such workers' firm to a foreign country in the production of articles or the supply of services like or directly competitive with articles which are produced or services which are supplied by such firm; or such workers' firm has acquired from a foreign country articles or services that are like or directly competitive with articles which are produced or services which are supplied by such firm," and (ii) the shift or acquisition of articles or services described in clause (i) "contributed importantly to such workers' separation or threat of separation").

Determination, 75 Fed. Reg. at 51,849.  Labor affirmed its Negative Determination after conducting additional investigations – first in the course of an administrative proceeding for reconsideration, then in the course of two voluntary remand proceedings subsequent to commencement of this action.[7]

In response to Labor's inquiry, the subject firm explained that the Plaintiffs' termination was due to a cost-cutting effort and was not in any way attributable to an increase in imports or a shifting abroad of any production or services. See Supplemental Admin. R., ECF No. 22 ("SAR") at 27. Labor's investigations revealed that the subject firm designs new hard drive products in the United States and mass produces those hard drives in Asia, employing U.S.-based hard drive engineers such as Plaintiffs to work as part of the design process and foreign-based engineers to work as part of the manufacturing process. See SAR at 30-32.  Before the design is

---

[7] See supra note 1.  Labor explained that, in addition to obtaining supplementary information from the subject firm and soliciting new input from the Plaintiffs, each supplementary investigation confirmed all previously collected information and addressed all of Plaintiffs' allegations, without altering Labor's conclusion that the TAA eligibility criteria had not been met. See Negative Determination on Reconsideration, 76 Fed. Reg. at 10,403; Negative Determination on Remand, 76 Fed. Reg. at 61,747; Negative Determination on Second Remand, 77 Fed. Reg. at 8286-87.

approved for mass production, however, the subject firm manufactures prototype hard drives, sometimes in the U.S. and sometimes abroad,[8] to ensure that the new designs are functional. SAR at 11. Although prototypes are produced for internal product-development purposes, the subject firm sells a portion of its prototypes after they have been tested. Id. Because the subject firm considers the creation of a prototype drive to be a necessary step in the process of designing hard drives, and because the firm considers the design of new hard drives to be the "primary function" of all of its U.S.-based hard disk drive engineers, Plaintiffs' work at the subject firm was related to the firm's domestic production of hard drive prototypes. See id. at 22. However, the subject firm stated that no portion of the firm's domestic production of prototype drives shifted abroad during the relevant time frame. Id. at 23.

Labor found that "U.S. aggregate imports of articles like or directly competitive with hard disk drives declined in the relevant time period." Negative Determination on Remand, 76 Fed. Reg. at 61,746 (citations to record omitted); see 19 U.S.C. § 2272(a)(2)(A)(ii) (requiring an increase in like or directly competitive imports for TAA eligibility pursuant to

---

[8] The firm explained that [["

"]] SAR at 22.

part (A) of § 2272(a)(2)).  In addition, Labor concluded that Plaintiffs' separation from the subject firm was not attributable to any shift of their work abroad. <u>Negative Determination on Remand</u>, 76 Fed. Reg. at 61,747; see 19 U.S.C. § 2272(a)(2)(B) (requiring a shift to or acquisition from abroad of relevant articles or services for TAA eligibility pursuant to part (B) of § 2272(a)(2)).  The agency based this conclusion on its finding that the work of the engineers employed by the firm abroad, as part of the manufacturing process, was not like or directly competitive with the services supplied by U.S.-based engineers like Plaintiffs, who were employed as part of the design process. See <u>Negative Determination on Remand</u>, 76 Fed. Reg. at 61,747 ("Because of the stage of production at which the functions are performed, the work performed by the engineers domestically and the engineers abroad is not interchangeable.") (citations to record omitted); <u>Negative Determination on Second Remand</u>, 77 Fed. Reg. at 8287 ("Upon review of the facts collected during the earlier investigations and the additional information procured through the second remand investigation, [Labor] has determined that the services provided by engineers at the subject firm's Asian facilities are not like or directly competitive with the services of the engineers located at the subject facility."); 19 U.S.C. § 2272(a)(2)(B) (requiring a shift to or acquisition from abroad of articles or services

"like or directly competitive with" those produced or supplied by the firm domestically). Accordingly, the agency affirmed its original negative determination regarding Plaintiffs' eligibility to apply for trade adjustment assistance. Negative Determination on Second Remand, 77 Fed. Reg. at 8287.

Plaintiffs now challenge Labor's Negative Determination on Second Remand. See Cmts. of Pls. Former Employees of Western Digital Technologies, Inc. Regarding the Second Remand Results, ECF Nos. 39 (public) & 40 (confidential) ("Pls.' Br.").

**STANDARD OF REVIEW**

The Court will uphold Labor's determination if it is supported by substantial evidence on the record and is otherwise in accordance with law. See 19 U.S.C. § 2395(b); Former Emps. of Se. Airlines, __ CIT at __, 774 F. Supp. 2d at 1335. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Former Emps. of Barry Callebaut v. Chao, 357 F.3d 1377, 1380-81 (Fed. Cir. 2004) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)). "The reviewing court must take into account contradictory evidence in the record, but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported

by substantial evidence." Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981) (internal quotation marks and citations omitted).

**DISCUSSION**

At issue is Labor's determination that TAA eligibility requirements were not met because neither increased imports nor shifts of production or services abroad contributed importantly to Plaintiffs' separation from the subject firm. Negative Determination on Reconsideration, 76 Fed. Reg. at 10,403.  In making this determination, Labor gave credence to the company's explanation that the termination of Plaintiffs' employment, which was announced in December of 2008, was part of a cost-cutting effort in response to a global economic downturn. See SAR at 27-31.  In the course of its investigation, which included three follow-up inquiries, Labor found no evidence to support Plaintiffs' claims to the contrary. See Negative Determination on Second Remand, 77 Fed. Reg. at 8287.  In particular, Labor found no evidence to substantiate Plaintiffs' claim that their separation was due to a shift abroad of the work that Plaintiffs had performed in the United States. Id.

In challenging Labor's Negative Determination on Second Remand, Plaintiffs reiterate their claim that their separation was due to a shift abroad of the work that they had

performed domestically. Pls.' Br. at 9-13.[9] Plaintiffs claim that Labor's finding that the separation was not attributable to such a shift is not supported by substantial evidence. Id.  In support of this argument, Plaintiffs challenge Labor's conclusion that because Plaintiffs' work was not interchangeable with the work of the engineers that the subject firm employed abroad, changes in the workforce abroad could not have affected Plaintiffs' worker group, and therefore could not have "contributed importantly" to the layoffs at issue. Id.; see Negative Determination on Second Remand, 77 Fed. Reg. at 8285; 19 U.S.C. § 2272(a)(2)(B).  Plaintiffs emphasize record evidence that 1) the subject firm employs engineers in the design and production of prototype hard drives both domestically and abroad; and 2) the engineers employed abroad received training from the domestic engineers, including some of the Plaintiffs. See Pls.' Br. at 10-11.

As Labor explains, however, the conclusion that the subject firm's U.S.- and Asia-based engineers perform functions that are not like or directly competitive with one another is not inconsistent with the evidence emphasized by the Plaintiffs.

---

[9] Plaintiffs do not offer a reading of the record to contradict Labor's conclusion that no increase in imports contributed importantly to Plaintiffs' separation from the subject firm. See Pls.' Br.

See Negative Determination on Second Remand, 77 Fed. Reg. at 8285-87.

With regard to training, the record reveals that the subject firm's business model is to design new products in the United States and mass manufacture them abroad. Negative Determination on Remand, 76 Fed. Reg. at 61,747.  Having worked on the product's design through the prototype stage, the domestic engineers routinely provide training to the engineers who will be overseeing the mass production abroad. See id. ("[T]he firm states that the foreign engineers . . . must be knowledgeable about the new products [that are developed domestically] in order to carry out their [manufacturing-related] work, so foreign engineers visit the United States to train on the new products to oversee the production at the manufacturing facilities.").  Given this explanation, the evidence of training that Plaintiffs emphasize does not compel the conclusion that the work of the U.S.- and Asia-based engineers is functionally interchangeable. Id. ("[T]he training of foreign workers in the U.S. does not show that the roles of the domestic [engineers] and engineers abroad are interchangeable.") (citations to record omitted).  That the subject firm's foreign (manufacturing) engineers appear dependent on training provided by the domestic (design) engineers reasonably supports Labor's conclusion that the

foreign engineers cannot function as substitutes for the firm's domestic engineers. See id. ("According to the subject firm, the engineering work performed abroad not only requires the engineers to be present at the manufacturing location, but is also different and less complex than the development work performed by the domestic engineers.").[10]

With regard to the firm's design and production of prototype drives abroad, the investigations revealed that the nature of the company's prototype production abroad – and accordingly the function of the engineers employed in such production – substantially differs from the company's domestic prototype production.[11] Plaintiffs argue that the company's representations in this regard are contradicted by "numerous exhibits [on record,] including job listings posted in Malaysia

---

[10] Plaintiffs' reliance on Elec. Data Sys. Corp., I Solutions Ctr., Fairborn, Ohio, 71 Fed. Reg. 18,355 (Dep't Labor Apr. 11, 2006) (notice of revised determination on remand), wherein Labor issued a positive determination of TAA eligibility to former employees who showed that foreign-based workers had been trained in the production of the same articles as those produced by the former employees, id. at 18,356, is inapposite. See Pls.' Br. at 12-13.  Unlike the workers in that case, Plaintiffs have not shown here, and Labor's investigations have not revealed, that the training provided to foreign-based engineers was substantively identical to that required to perform Plaintiffs' own duties and functions within the firm. See Negative Determination on Remand, 76 Fed. Reg. at 61,747.

[11] Specifically, [["

                                                    "]] SAR at 22.

by [the subject firm]." See Pls.' Br. at 11.  But Labor conducted a detailed analysis of all such exhibits and concluded that, contrary to Plaintiffs' assertions, this evidence is consistent with the company's representations, and the agency's ultimate conclusion, that the work of the U.S.-based engineers is not like or directly competitive with that of the engineers based abroad. Negative Determination on Second Remand, 77 Fed. Reg. at 8285-87.

Thus, for example, Labor noted that "according to the position descriptions [of the Malaysian job listings submitted by the Plaintiffs], none of the vacant positions involved the design or development of hard disk drives." Negative Determination on Second Remand, 77 Fed. Reg. at 8286.[12] Rather, "careful examination of the duties listed for each position establishes that the work of these engineers relates to

---

[12] See also id. at 8286-87 ("Close examination of the listings showed that only one position called for 'co-develop new product and channel feature with U.S. counterpart.' In any event, the position description does not specify that the 'co-development' refers to hard disk drives. None of the other positions listed call for development work of hard disk drives or any other products. Also, out of the 17 listings, only three contain the words 'develop' or 'design' and these three positions call for the development and design of software and code applications, not hard disk drives, which the subject firm has ascertained is the function of the domestic engineers.") (citations to the record omitted).

manufacturing." Id. at 8286 (providing examples and citing to the record).

Plaintiffs also emphasize the record evidence that "failure analysis" is performed by both domestic and foreign engineers employed by the subject firm, arguing that this evidence compels the conclusion that the foreign-based engineering services are like or directly competitive with the services provided by the domestic engineers. Pls.' Br. at 12. But the subject firm explained that the "failure analysis" performed by the domestic engineers differs from the "failure analysis" performed by the foreign-based engineers. SAR at 12. Whereas the domestic engineers perform failure analysis at the early prototype stages of product development, the foreign-based engineers perform such analysis at the later stages of mass production, prior to market release. Id.; see Negative Determination on Second Remand, 77 Fed. Reg. at 8287 (addressing Plaintiffs' "failure analysis"-based argument and citing to the record). Accordingly, the record reasonably supports Labor's conclusion that the services provided by the subject firm's foreign-based engineers were not like or directly competitive with those provided by the firm's domestic engineers, including

Plaintiffs,[13] notwithstanding the evidence that both groups perform some type of "failure analysis." See Negative Determination on Second Remand, 77 Fed. Reg. at 8287; SAR at 12.

Plaintiffs suggest that the court should order Labor to conduct a more thorough investigation. Pls.' Br. at 15-22. But while Plaintiffs appropriately emphasize Labor's affirmative obligation to investigate TAA claims "with the utmost regard for the interests of the petitioning workers,"[14] the agency's authority to act in the workers' interests is cabined by the statutory conditions for TAA eligibility. See 19 U.S.C. § 2272(a).[15]  Here, Labor has marshaled the relevant facts[16] and

---

[13] The court thus needs not, and so does not, address Labor's alternative conclusion that, to the extent that the record could be read to suggest a relevant shift abroad of production, the shift was negligible, and therefore could not serve as a basis for TAA eligibility. See Negative Determination on Second Remand, 77 Fed. Reg. at 8287.

[14] Pls.' Br. at 15 (quoting Former Emps. of Invista, S.a.r.l. v. U.S. Sec'y of Labor, __ CIT __, 714 F. Supp. 2d 1320, 1336 (2010)); see Former Emps. of Invista, __ CIT at __, 714 F. Supp. 2d at 1329 (collecting cases).

[15] See also Former Emps. of Invista, __ CIT at __, 714 F. Supp. 2d at 1336 n.22 (citing United Glass & Ceramic Workers v. Marshall, 584 F.2d 398, 400 (D.C. Cir. 1978) (quoting legislative history explaining that job losses are not covered by TAA if they "would have occurred regardless of the level of imports, e.g., those resulting from domestic competition, seasonal, cyclical, or technological factors")).

[16] See 29 C.F.R. § 90.12 (2009) ("In the course of any [TAA] investigation, representatives of [Labor] shall be authorized to contact and meet with responsible officials of firms, union
(footnote continued)

interpreted the evidence to conclude that the statutory conditions for TAA eligibility have not been met. Labor has addressed each of Plaintiffs' claims with specific references to the record, and Plaintiffs' contention that more evidence is required is essentially a disagreement with the agency regarding the conclusions drawn from the record.[17] As discussed above, the

---

officials, employees, and any other persons, or organizations, both private and public, as may be necessary to marshal all relevant facts to make a determination on the petition.").

[17] Plaintiffs contend, for example, that the record of Labor's investigations is deficient because Labor's conclusion that Plaintiffs' worker group did not provide the same services as those performed by engineers in Asia was based on a sample of services that "did not include the full range of engineering services provided by the HDD group in the United States and in Asia." Pls.' Br. at 17. But the record reveals that, "although the [employees in the worker group represented by the Plaintiffs] ha[d] different functions and belong[ed] to separately identifiable worker groups, [each of these] workers suppl[ied] services that [were] vertically integrated in the production of hard disk drives . . . ." SAR at 29. Thus the record reveals that Labor has already considered the various subgroups within the larger worker group and determined that this evidence is consistent with Labor's analysis of this case.
    Plaintiffs also contend that the record remains incomplete because it lacks evidence regarding prototype production in the United States and Asia. Pls.' Br. at 18-20. But the record does contain information in this regard. See SAR at 23 ([[

]]), 38-39 (providing Labor's analysis of this information). In any event, the record reasonably supports the conclusion that the firm's domestic prototype production significantly differs from the firm's prototype production abroad. See id. at 22 ([["

"]]).
                                              (footnote continued)

record of Labor's investigations contains sufficient evidence for a reasonable mind to conclude, as the agency did, that neither an increase in imports nor a shift abroad of production or services contributed importantly to the separation of Plaintiffs' worker group from the subject firm.  Moreover, also as discussed, the record as a whole is reasonably consistent with this conclusion.[18]  Accordingly, Labor's determination that Plaintiffs' separation from the subject firm was due neither to an increase in imports nor to a shift abroad of production or services is supported by substantial evidence. See 19 U.S.C. § 2395(b).

---

Finally, Plaintiffs contend that the record is incomplete because "[i]t is unclear from the record whether engineering services were formerly provided by the [worker] group [represented by the Plaintiffs] in support of wafer production or domestic production of other components[,] [and] the record [does not] contain information to determine whether such functions were shifted to engineers in Asia." Pls.' Br. at 20-21.  But the existing record already sufficiently supports the conclusion that Plaintiffs' worker group was not involved in the domestic production of wafers or other components, because such components are designed by a separate group of engineers at a different facility. SAR at 21.

[18] Compare with Former Emps. of Invista, __ CIT at __, 714 F. Supp. 2d at 1329 (relied on in Pls.' Br. at 15-16) ("[T]he administrative record in this case was replete with evidence supporting the Workers' claim that their terminations were attributable to . . . the 2004 shift of . . . production to Mexico; and, moreover, . . . the evidence to the contrary (including, in particular, the statement [relied on by the agency]) was not only scant, but also weak." (internal quotation marks and citation omitted)) (awarding the plaintiffs attorneys' fees and expenses, pursuant to the Equal Access to Justice Act).

**CONCLUSION**

For the reasons stated above, Labor's <u>Negative Determination on Second Remand</u>, 77 Fed. Reg. at 8287, is affirmed.  Judgment will be entered accordingly.

                                         _____/s/ Donald C. Pogue_____
                                         Donald C. Pogue, Chief Judge

Dated: December 21, 2012
       New York, NY